By the Court.—Freedman, J.
—By the contract in question the plaintiff undertook to supply or furnish defendant with oil of vitriol or sulphuric acid of a certain standard for one year from the date thereof, and the defendant had the option to call during that term for not more than 10,000, nor less than 7,000 carboys. These the plaintiff agreed to deliver at any place to be designated by the defendant within the limits of the City of ¡New York in lots of not less than ten carboys. The contract provided for the rendition of monthly statements of account and their settlement, and that on April 25, 1874, which is one year from the date of it, it should terminate, without reference to the number of carboys of acid delivered. But there was no restriction as to the use which the defendant was to make of the acid. Whether he needed it in the ordinary course of his business as a soda water manufacturer, or as a *41 wholesale or retail dealer in the article itself, did not concern the plaintiff, and no such limitation can be en-grafted upon the contract by the court. The parties stood on an equal footing when they made it; they well understood its object, purpose, scope and meaning, and hence the court cannot make a new or different contract for them.
Having been reduced to writing, it must be taken to be the repository and evidence of the final intention and understanding of the parties. The rule is elementary that when parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties and the extent and manner of their undertaking was reduced to writing ; and all oral testimony of a previous colloquium between the parties, or of conversations or declarations at the time when it was completed, or afterwards, is rejected.
No mere improvidence in the terms of the contract, or difficulty in its execution, if any were shown, can therefore impair plaintiff’s obligations thereunder.
It is only where the language of a contract is indefinite or ambiguous, that explanatory testimony can be given or the acts of the parties in carrying it out be received as a practical construction of it. But the case at bar is not of this character. The contract is plain and unambiguous, and to incorporate the limitation contended for by plaintiff would not be in explanation, but in restriction of the terms of the contract. In Kemp v. Knickbocker Ice Co., recently decided by the court of appeals, the limitation was in the contract itself.
Inasmuch, however, as the contract in question did not provide for any specific quantity to be de *42 livered per day or month during the life of the contract, it was undoubtedly competent for the parties to regulate the quantity to be delivered at regular intervals by agreement outside of the contract. But the case contains no evidence which would have authorized the jury, if the question had been submitted to them, to find that such regulation was in point of fact entered into between the parties as a modification of the contract. STor was there evidence, .sufficient to carry the case to the jury, that the defendant waived any of his rights under the contract, or that he ever refused to receive any of the acid when the plaintiff was ready and willing and offered to deliver it.
The rights of the parties are therefore to be determined strictly according to the terms of their contract, and under that the defendant had a right to insist that during the twelfth month the plaintiff should deliver acid sufficient to make up the 10,000 carboys called for by the contract. The defendant having made such demand, and plaintiff having refused, the defendant was entitled to the damages sustained in consequence of such non-delivery. The evidence showed that on April 2d, 1874, there remained undelivered 3,700 carboys ; that the average weight was 166 8-10 pounds ; and that the defendant’s damage was at least % cents a pound, that being the difference between 1% cents, the contract price, and 2% cents, the lowest market price which appeared in evidence.
Under these circumstances, there being no material conflict of evidence, the trial judge properly refused to submit to the jury any of the matters requested by the plaintiff, and properly directed a verdict for the defendant, representing the difference between plaintiff’s claim for balance due on acid delivered, and the lowest estimate of damages sustained by defendant in consequence of the non-delivery of the balance.
*43 The judgment and order appealed from should be severally affirmed with costs.
Speir, J., concurred.